# IN THE COURT OF APPEALS OF IOWA

No. 16-0581
Filed June 15, 2016

**IN THE INTEREST OF S.B. and K.B.,**
**Minor Children,**

**C.S., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

A mother appeals from the order terminating her parental rights. **AFFIRMED.**

Linda A. Hall of Linda Hall Law Firm & Mediation Services, P.L.L.C., Cedar Falls, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Melissa A. Anderson Seeber of the Juvenile Public Defender's Office, Waterloo, for minor children.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**McDONALD, Judge.**

Christine challenges the termination of her parental rights in her children S.B. and K.B., ages ten and eight, respectively. The juvenile court terminated Christine's parental rights pursuant to Iowa Code section 232.116(1)(e), (f), and (*l*) (2015). The standard of review and controlling framework are well-established and need not be repeated herein. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (stating review is de novo and setting forth the applicable "three-step inquiry"); *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We address each of Christine's arguments in turn.

Christine contends the Iowa Department of Human Services (IDHS) failed to make reasonable efforts to reunify the family. Christine specifically challenges the denial of family therapy sessions. As part of its ultimate proof, the State must establish it made reasonable efforts to return the child to the child's home. *See* Iowa Code § 232.102(7) (providing IDHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [department of human services] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *C.B.*, 611 N.W.2d at 493. The core of the reasonable efforts mandate is the child welfare agency must make reasonable efforts to "facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The nature of the reasonable efforts mandate is

determined by the circumstances of each case. *See C.B.*, 611 N.W.2d at 493 (discussing scope of mandate).

We conclude IDHS did make reasonable efforts under the circumstances to reunify the family. The family was provided with numerous other services, including, but not limited to: family, safety, risk, and permanency services; parental skill training; supervised visitation; substance abuse evaluation and treatment; substance abuse testing; mental health evaluation and treatment; domestic violence counseling; transportation assistance; family counseling; family team meetings; and play therapy. The specific family therapy sessions Christine requested were to be provided at the discretion of the children's play therapist. The children's play therapist invited Christine to call and discuss the issue and attend the children's sessions, but Christine did neither. Christine's personal therapist testified family therapy would have been helpful, but Christine's therapist did not contact the play therapist to recommend the treatment. The play therapist recommended against family therapy because of concerns regarding the mother's inconsistency and the efficacy of the treatment when the mother had not addressed her personal issues. The decision to not proceed with family therapy was reasonable under the circumstances, and the denial of the therapy where the mother had not taken action to ensure the efficacy of the service does not constitute a failure to make reasonable efforts.

The issue in this case was not the department's failure to make reasonable efforts to reunify this family. The issue was Christine's lack of engagement in a timely, consistent, or earnest manner with the services provided to address the issues precipitating removal. Christine has used marijuana and

methamphetamine, among other things, since she was nine years old. She has a long history of unsuccessful participation in substance abuse treatment programs since that time. During the pendency of this case, Christine was unsuccessfully discharged from several different substance abuse treatment programs and left several other substance abuse treatment programs against medical advice. She missed forty-six of fifty-one drug tests while this case was pending. On those occasions she did test, she tested positive for controlled substances, including marijuana and methamphetamine. Christine has a long history of mental health conditions she was unable to address. She has been diagnosed with major depressive disorder, generalized anxiety disorder, and polysubstance abuse. She did not follow her mental health treatment consistently during the course of this case. The mother started treating with a therapist in June 2015, almost nine months after the initiation of this case, but her treatment was inconsistent. The mother missed eleven of twenty-seven appointments. Christine's failure to use the services provided defeats her reasonable efforts claim. *See, e.g., In re B.G.*, No. 15-0732, 2015 WL 5996936, at \*4 (Iowa Ct. App. Oct. 14, 2015) (holding the State established reasonable efforts where services were provided but the mother did not avail herself of the services); *In re D.L.*, No. 13-0645, 2013 WL 3458219, at \*2 (Iowa Ct. App. July 10, 2013) (holding the State met its burden in making reasonable efforts where services were provided but not used); *In re B.B.*, No. 12-0807, 2012 WL 2408714, at \*3 (Iowa Ct. App. June 27, 2012) ("Considering the number and variety of services offered or provided, the delays in or failure of services attributable to the mother, the age of the child, and the length of time the child

has been removed from the mother's care, we find the State made reasonable efforts to reunite the mother with her daughter.").

Christine contends the juvenile court should have deferred permanency in this case and granted her request for an additional six months' time to work toward reunification with her children because of the department's failure to make reasonable efforts and provide necessary services. To defer permanency for six months, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

On de novo review, we conclude an additional six months would not have obviated the need for removal. The mother has long-lasting, severe, untreated substance abuse issues and mental health conditions preventing her from providing adequate care for the children. *See, e.g.*, *In re C.M.*, No. 14-1140, 2015 WL 408187, at *4–5 (Iowa Ct. App. Jan. 28, 2015) (affirming termination of parental rights where the parents sought more time but evidence established they were unlikely to resolve their substance abuse problems); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *4 (Iowa Ct. App. Jul. 16, 2014) (affirming termination of parental rights where the father had history of substance abuse); *In re C.L.*, No. 11-0178, 2011 WL 1781910, at *2 (Iowa Ct. App. May 11, 2011) (holding juvenile court "properly declined to defer permanency" where the father "was not following through with substance abuse treatment or mental health services"); *In re J.L.*, No. 02-1968, 2003 WL 21544226, at *3 (Iowa Ct. App. July 10, 2003) (concluding that relapse of parent despite offer of services supported

termination of parental rights); *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[I]n considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood that the parent will be in a position to parent the child in the foreseeable future."); *In re A.J.*, 553 N.W.2d 909, 915 (Iowa Ct. App. 1996) (concluding that lengthy history of repeated relapses and guarded prognosis for sobriety supported termination of parental rights), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). She was long-term unemployed at the time of the termination hearing and had only recently obtained shelter. While the mother now claims to be ready to address these long-standing issues, "[w]hat's past is prologue." *In re K.F.*, No. 14-0892, 2014 WL 4635463, at *4 (Iowa Ct. App. Sept. 17, 2014); *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct is instructive in determining future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (concluding a parent's past behavior is indicative of the quality of care the parent is capable of providing in the future).

Christine contends termination of parental rights is not in the children's best interests because of the lack of concurrent planning. "The legislature has categorically determined the needs of a child are promoted by termination of parental rights if the grounds for termination of parental rights exist." *See In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa 1992). However, there is no all-encompassing best interest standard that can resolve any particular case. The court must look at the particular facts and circumstances of each case, determining the children's short-, intermediate-, and long-term best interests. *See* Iowa Code § 232.116(2) (identifying relevant considerations); *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006)

(stating the court must look to immediate and long-term interests). The children were placed in a preadoptive home. Prior to the termination hearing, the preadoptive family advised the department of human services they could not proceed with adoption but could continue to care for the children until a new family was found. The change in circumstances does not militate in favor of maintaining the parent-child relationship. The IDHS worker testified the mother should not be granted additional time even while IDHS searched for a permanent home for the children because of the mother's demonstrated inability to care for the children.

Christine contends the juvenile court should not have terminated her parental rights due to the closeness of the parent-child bond. Section 232.116(3)(c) provides the court may avoid termination if "there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Our consideration is not merely whether there is a parent-child bond, "our consideration must center on whether the child would be disadvantaged by termination, and whether the disadvantage overcomes" the mother's inability to provide for the children's developing needs. *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010); *see also* Iowa Code § 232.116(2) (setting forth the factors in determining the child's best interests). Here, the mother has demonstrated over a long period of time the inability to care for her children adequately. They have been removed from her care on two different occasions for long periods of time. The older child told her foster family, "I don't feel like I've ever really had a mom." The older child also said that "she has no life" and just wants a "normal life." She has waited long

enough for that opportunity. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *A.B.*, 815 N.W.2d at 778.

We affirm the order terminating the mother's parental rights in her children S.B. and K.B.

**AFFIRMED.**